UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN WILLIAM SCHURZ,

        Petitioner,                                Case No.  21-10787
                                                               Honorable Mark A. Goldsmith

v.

JOHN CHRISTIANSEN,

        Respondent.
_____/

## OPINION & ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS AND (2) DENYING CERTIFICATE OF APPEALABILITY

Michigan prisoner Ryan William Schurz filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254.  He challenges his 10-to-40-year sentence for delivery of less than 50 grams of heroin, Mich. Comp. L. § 333.7401(2)(a)(iv).  For the reasons explained below, the Court denies the petition.  The Court denies a certificate of appealability.

### I.  BACKGROUND

Schurz's conviction arises from the death of Caleb Page.  The Michigan Court of Appeals summarized the circumstances surrounding Page's death as follows:

> Around 8:30 p.m. on September 17, 2015, defendant and his friend, Caleb Page, met defendant's drug dealer [Red] from whom defendant purchased heroin. At some point during that evening, defendant injected some of the heroin and he gave Caleb some which he snorted.  Defendant and Caleb spent the evening at defendant's house watching television.  At around 10:30 p.m., defendant went to bed but about 15 minutes later he rose to use the bathroom and heard a gurgling or gasping sound downstairs.  Defendant went downstairs to find Caleb on the couch not breathing with signs that he had vomited.
> A 911 operator received an emergency call and dispatched first responders who arrived at the scene at 12:47 a.m. on September 18, 2015.  The first responders' report noted the time of Caleb's collapse as 12:40 a.m.  When they arrived at the scene, they found defendant in the driveway attempting to administer CPR to Caleb while on his phone with the 911 operator. Caleb appeared unresponsive and in full

cardiac arrest. The first responders administered CPR and asked defendant if Caleb had used any drugs or alcohol. Defendant told them that he personally had not done any drugs or alcohol. He stated that he did not believe that Caleb had done any drugs or alcohol because he had not witnessed it, but he told them that Caleb had a drug addiction. Defendant also told the first responders that when Caleb collapsed he immediately called 911. A Jackson County Ambulance arrived and paramedics administered Narcan, an opiate antagonist, which had little effect. They took Caleb to the hospital where he was pronounced dead.

When Caleb's father noticed that Caleb had not come home the night before, he drove to Caleb's grandparents' house and asked them if they had seen him. They had not, so he went next door to defendant's house and asked defendant if he had seen Caleb. Defendant said that he had not seen him in weeks. Around 4:00 p.m. on September 18, 2015, the hospital informed Caleb's father of Caleb's death. Caleb's father also learned that defendant had been the one to call 911.

A toxicology lab tested a postmortem blood draw and a urine sample from Caleb and reported that he tested positive for several substances including a cocaine metabolite, benzoylecgonine, the antidepressant Zoloft and its metabolite, tranquilizers normally prescribed for anxiety, fentanyl, [ ] opiates, [ ] and naloxone [the brand name for Narcan]. Caleb died of an overdose.

The police investigated Caleb's death and interviewed defendant. He initially told the police that Caleb transacted for the heroin, but later he admitted that he purchased it from his dealer and shared it with Caleb. The Jackson County prosecutor charged defendant with delivery of a controlled substance causing death and delivery of heroin less than 50 grams. Defendant pleaded guilty to delivery of heroin less than 50 grams, a Class D offense, which carries a statutory maximum sentence of 20 years' imprisonment under MCL 333.7401(2)(a)(iv), and 40 years when doubled as required under MCL 333.7413.

People v. Schurz, No. 340420, 2020 WL 5084315, at *1–*2 (Mich. Ct. App. Aug. 27, 2020).

As noted by the Michigan Court of Appeals, Schurz was charged with delivery of a controlled substance causing death (Count 1), Mich. Comp. L. § 750.317a, and delivery of less than 50 grams of a controlled substance as a second-offense controlled substance offender (Count 2), Mich. Comp. L. §§ 333.7401(2)(a)(iv), 333.7413. (Dkt. 6-7, PageID.595–596.) Schurz waived his right to have a preliminary examination as to Count 2 and Count 1 was dismissed. Waiver of Preliminary Exam. at PageID.581 (Dkt. 6-7).

2

On August 19, 2016, Schurz pleaded guilty to delivery of less than 50 grams of a controlled substance (heroin) as a second or subsequent offense. On October 26, 2016, he was sentenced to 10 to 40 years' imprisonment.

Schurz filed a motion for resentencing in the trial court raising these claims:

I. Resentencing is required. The existing sentence is invalid, unreasonable, and resentencing is warranted because:

> a. Inaccurate information was used at sentencing;
>
> b. A sentencing based upon inaccurate information is invalid;
>
> c. The reasons given for the departure violates public policy and departures that violate public policy cannot be reasonable;
>
> d. An open question exists on the correct standard to apply, and this motion could be held in abeyance while that issue is resolved by the Michigan Supreme Court;
>
> e. In lieu of granting a resentencing, the court could hold that Mich. Comp. Laws § 333.7403(3), a good Samaritan statute, be given retroactive effect and allow a plea withdrawal.

The trial court denied the motion for resentencing. Order, People v. Schurz, No. 2016-4640-FH (Oct. 4, 2017) at PageID.485 (Dkt. 6-6).

Schurz sought leave to appeal to the Michigan Court of Appeals. The Michigan Court of Appeals denied leave to appeal and denied a motion for reconsideration. See Order, People v. Schurz, No. 2016-4640-FH (Jan. 3, 2018) at PageID.247 (Dkt. 6-6); Order, People v. Schurz, No. 2016-4640-FH (Nov. 28, 2017) at PageID.250 (Dkt. 6-6). Schurz filed an application for leave to appeal to the Michigan Supreme Court. In lieu of granting leave to appeal, the Michigan Supreme Court remanded the case to the Michigan Court of Appeals for consideration as on leave granted. People v. Schurz, 935 N.W.2d 355 (Mich. 2019).

3

On remand, Schurz raised these claims before the Michigan Court of Appeals:

I. The upward departure is unreasonable. The reasons given to support the departure are already accounted for in the guidelines and greatly impacted the range or they find no support in the record. Judicial reassignment is appropriate.

II. Schurz's sentence is based on extensive and materially false information in violation of due process under the United States Constitution Amendments V and IX and under Michigan Law. Resentencing is required.

III. Schurz's guidelines were scored in error at Offense Variables 3 and 19. Because the error altered the advisory range, resentencing is required.

The Michigan Court of Appeals affirmed Schurz's conviction and sentence. People v. Schurz, No. 340420, 2020 WL 5084315, at *1 (Mich. Ct. App. Aug. 27, 2020). Schurz's subsequent application for leave to appeal to the Michigan Supreme Court was denied. People v. Schurz, 955 N.W.2d 900 (Mich. 2021).

Schurz then filed the pending petition. He seeks relief on the ground that his sentence is invalid under United States Supreme Court precedent because it is based on materially inaccurate information. Respondent filed an answer to the petition (Dkt. 5) maintaining that the petition is meritless. Schurz has filed a reply brief (Dkt. 7).

## II.  STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases." Shoop v. Hill, 586 U.S. 45, 48 (2019). A federal court may grant habeas corpus relief only if the state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of," Supreme Court precedent that was "clearly established" at the time of the adjudication. 28 U.S.C. § 2254(d).

4

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405–406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. To obtain habeas relief in federal court, a state prisoner must show that the state-court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

A state court's factual determinations are presumed correct on federal habeas review. See 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. Id. For claims that were adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

### III.  DISCUSSION

Schurz seeks habeas relief on the ground that the trial court violated his federal due process rights when it sentenced him on the basis of inaccurate information. Specifically, he maintains that the trial court based the sentence on its incorrect findings that Schurz killed the victim and that Schurz interfered with the administration of justice or the rendering of emergency services.

Schurz raised this claim on direct appeal. The Michigan Court of Appeals held that the trial court did not base its sentencing decision on inaccurate or false information. Schurz, 2020 WL 5084315, at *9.

A sentence may violate federal due process if it is based on materially false information that the defendant had no opportunity to correct. Townsend v. Burke, 334 U.S. 736, 741 (1948); see also Roberts v. United States, 445 U.S. 552, 556 (1980); United States v. Sammons, 918 F.2d 592, 603 (6th Cir. 1990) (defendant must have a meaningful opportunity to rebut contested sentencing information). To prevail on such a claim, a petitioner must show (i) that the information before the sentencing court was materially false, and (ii) that the court relied on the false information in imposing the sentence. United States v. Tucker, 404 U.S. 443, 447 (1972).

### A.

Schurz first maintains that the sentencing judge relied on materially false information when the judge stated: "And in the end, you definitely did what they charged you with, you delivered heroin to your best friend and it killed him." 10/26/16 Hr'g Tr. at PageID.219 (Dkt. 6-4). Schurz argues that because the toxicology report showed several substances in the victim's blood and urine, including cocaine metabolite, benzoylecgonine, the antidepressant Zoloft, tranquilizers normally prescribed for anxiety, fentanyl, and opiates (including heroin metabolite), it is impossible to know which of these substances caused Page's death. Indeed, Schurz argues that because he (Schurz) survived a heroin injection—a more direct delivery to the bloodstream than Page's nasal ingestion of the heroin—it was not the heroin alone that caused Page's death. The Michigan Court of Appeals was not persuaded by this argument:

> The trial court concluded that Caleb died from using the drugs defendant gave him. Defendant asserts that the trial court's conclusion rested on inaccurate or false information because he used the same heroin and did not die. Defendant contends without evidentiary support that the drugs he gave Caleb did not cause his overdose and death. The record, however, lacks any evidence that Caleb would have died without the use of the drugs given him by defendant. Although other drugs may have contributed to Caleb's death, the trial court could reasonably conclude that, but for the drugs defendant provided Caleb, he would not have died. The trial court

6

> drew reasonable inferences from the record evidence that established that the drugs defendant gave Caleb served as a cause in fact of his death. Defendant did not challenge the record evidence by the submission of any evidence that called into question the trial court's conclusion. Because defendant, an admitted longtime heroin addict, did not die from the heroin he injected, does not require the conclusion that the drugs he gave Caleb could not serve as a cause in fact of Caleb's death. The trial court properly rejected that argument and in so doing cannot be found to have based defendant's sentence on inaccurate or false information. Defendant admitted that he gave Caleb drugs that he purchased the night of his overdose and death and that Caleb snorted it. The trial court could reasonably infer from a preponderance of the record evidence, including the toxicology report's test results that found a significant presence of opiates and fentanyl in Caleb's bodily fluids after his death, that, but for Caleb's use of the drugs that defendant delivered to him, Caleb would not have died.

Schurz, 2020 WL 5084315, at *4.

Schurz fails to show that the Michigan Court of Appeals' decision was contrary to or an unreasonable application of clearly-established Supreme Court precedent. He also fails to show that it is based on an unreasonable determination of the facts. While Page certainly had other substances in his system, it was not unreasonable for the trial court to deduce that the heroin Page snorted shortly before his death caused Page's death. The trial court relied on many factors in reaching this conclusion, including its own experience. See 10/26/16 Hr'g Tr. at PageID.202 ("[T]he court is all to[o] aware heroin is frequently cut with Fentanyl, which is actually the most dangerous component used in heroin.").

The Supreme Court has held that a judge's reliance on his or her own experience does not render a sentencing proceeding unfair. See Barclay v. Florida, 463 U.S. 939, 948–951 (1983) (rejecting claim challenging trial judge's references to his own World War II experience). As the Supreme Court has explained:

> We have never suggested that the United States Constitution requires that the sentencing process should be transformed into a rigid and mechanical parsing of statutory aggravating factors. But to attempt to separate the sentencer's decision

7

from his experiences would inevitably do precisely that. It is entirely fitting for the moral, factual, and legal judgment of judges and juries to play a meaningful role in sentencing.

Id. at 950–951.

During the sentencing hearing, Schurz had an opportunity to challenge the presentence investigation report and scoring of the guidelines, and defense counsel did, in fact, challenge the conclusion that the heroin caused Page's death. Schurz also presented his sentencing claims to the state courts on appeal. Thus, he had an opportunity to rebut the information relied upon by the sentencing court. This opportunity satisfied the Townsend requirements. Petitioner fails to establish that the state trial court relied upon materially false or inaccurate information in imposing his sentence which he had no opportunity to correct. No due process violation occurred, and habeas relief is denied.

**B.**

Next, Petitioner argues that the trial court's finding that Schurz interfered with the administration of justice and/or with emergency medical services is materially false. This finding was the basis for scoring 10 points for offense variable 19. On direct review the Michigan Court of Appeals explained that "the plain and ordinary meaning of interfere with the administration of justice . . . is to oppose so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." Schurz, 2020 WL 5084315, at *5 (punctuation modified). It involves "conduct that constitutes an attempt to avoid being caught and held accountable for the sentencing offense." Id. (punctuation modified).

Schurz's identifies the following findings as false: (i) that Schurz lied to first responders, (ii) that he intended to flee and tampered with evidence, and (iii) that he waited to call police.

8

Initially, it must be recognized that during the sentencing hearing defense counsel stated that he and Schurz reviewed the entire presentence investigation report and had "no factual additions or corrections." 10/26/16 Hr'g Tr. at PageID.197. His failure to object to the factual accounts in the presentence investigation report amounted to an admission that information was correct. See, e.g., United States v. Vonner, 516 F.3d 382, 385 (6th Cir. 2008) (en banc) ("By failing to object to the presentence report, Vonner accepted all of the factual allegations contained in it . . . ."); United States v. Stafford, 258 F.3d 465, 476 (6th Cir. 2001) (holding that a failure to object to a presentence report is an "express admission" of drug type and quantity listed in report).

Schurz also fails to show that the trial court's conclusion that Schurz lied to first responders is incorrect. The Michigan Court of Appeals found "[a]mple evidence" to support the trial court's finding. Schurz, 2020 WL 5084315, at *5. Indeed, one of the first responders, firefighter Aaron Cartwright, told police Schurz told him that he "did not believe that the victim Caleb Page had done any drugs or alcohol," that he "was not certain on drugs," and "unsure if he took drugs or not." Cartwright Interview at PageID.558 (Dkt. 6-7). Schurz maintains that a first responder's handwritten report shows that "witness [Schurz] advised outside narcotics involved." See Pet. at PageID.25 (Dkt. 1). Respondent argues the relevant text instead states "witness advised possible narcotics involved." Answer at PageID.151 (Dkt. 5). The Court finds Respondent's deciphering of the handwriting more plausible, but need not resolve this issue because the evidence fairly supports a finding that Schurz was not truthful with first responders.

Schurz's statement to police was also inconsistent with his statements to first responders. In his police statement, Schurz said that he found Page on the couch not breathing at approximately 10:45 p.m. and called 911 five minutes later. Schurz Statement at PageID.559 (Dkt. 6-7). But he

9

told first responders, who arrived at the scene at 12:47 a.m., that he "called 911 immediately . . . no more than 10 minutes" ago. (Id.) Based upon this evidence, the trial court reasonably inferred that Schurz waited to call 911.

In addition, the trial court did not, as Schurz asserts, make a finding that Schurz intended to flee the state. See Pet. at PageID.26. Instead, the trial court questioned Schurz about a substantial amount of money he tried to obtain from his father under the pretext that the money would enable him to cooperate with police by making a controlled buy. Presentence Investigation Report at PageID.997 (Dkt. 6-9) The police detective handling the sting operation stated that Schurz's story was false. Id. The trial court asked Schurz whether he would use the money to leave the jurisdiction, to buy more heroin, or something else. 10/26/16 Hr'g Tr. at PageID.220. When Schurz denied intending to do any of those things, the trial court moved on. Id. The court made no finding about Schurz's intentions and there is no indication the court relied on any false information in this regard when sentencing Schurz.

The record also supports an inference that Schurz tried to conceal evidence. Schurz told police that he found Page inside the house on a couch but when first responders arrived Page was in the driveway. The trial court's conclusion regarding Schurz's motive for moving Page is a reasonable inference.

The trial court's conclusion that Schurz failed to cooperate with police in their attempt to complete a controlled buy from "Red" is supported by the presentence investigation report. The presentence investigation report includes a detailed summary of this aborted attempt including a detective's conclusion that Schurz was deceptive and attempted to evade police so he could purchase heroin from Red outside police presence. Presentence Investigation Report at

10

PageID.997–998. This summary, which Schurz did not dispute at sentencing, supports the trial court's conclusion.

In sum, the trial court considered Schurz's actions "before the crime, during the crime and after the crime." 10/26/16 Hr'g Tr. at PageID.216. Schurz disputes the trial court's interpretation and resolution of the information before it, but this is insufficient to establish that the state court's decision denying this claim is contrary to, or an unreasonable application of, Supreme Court precedent. Nor has Schurz shown the Michigan Court of Appeals' decision was based upon an unreasonable determination of the facts. Habeas relief is denied.

## IV. CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that none of the claims in the habeas petition warrant relief. Therefore, the Court denies a certificate of appealability.

11

## VI. CONCLUSION

For the reasons set forth above, the Court denies the petition for writ of habeas corpus and declines to issue a certificate of appealability.

SO ORDERED.

Dated: August 26, 2024  　　　　　　　　　　　　　s/Mark A. Goldsmith
　　　Detroit, Michigan  　　　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge